IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MR. TIARIKE HODGES, | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| MR. ROBERT SHANNON, et al., | : | NO. 07-5036 |
| Respondents. | : | |

## REPORT AND RECOMMENDATION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                    October 7, 2008

Before the Court is the *pro se* petition of Tiarike Hodges ("Hodges" or "Petitioner") for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner challenges his state court conviction on the grounds that his counsel was ineffective in several respects relating to his entry of a guilty plea at a time he was allegedly mentally ill and notwithstanding available alibi and/or exculpatory evidence. He also asserts that his due process rights were violated when the state courts did not permit him to withdraw his guilty plea or afford him an evidentiary hearing to develop his claim of innocence. For the reasons set forth below, we conclude that the claims raised fail on the merits and therefore **RECOMMEND** that the petition be **DENIED**. We further recommend that Petitioner's request seeking, *inter alia*, a stay of proceedings pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), be denied.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

The convictions giving rise to this petition were entered on May 6, 2003, when Hodges pled guilty to two counts of third-degree murder and one count each of criminal conspiracy and possessing an instrument of crime ("PIC").  His petition implicates several of the twists and turns his case took leading up to this guilty plea, as well as the performance of counsel thereafter.

The Commonwealth's investigation showed that Hodges, along with two friends, Brandon Baker and Walter Postley, arrived by car together at a West Philadelphia pizza shop in the middle of the afternoon of February 28, 1998.  After getting out of the car, Baker remained a short distance

---

[1]   In preparing this Report and Recommendation, we have reviewed Petitioner's Form Application for Habeas Corpus under 28 U.S.C. § 2254 ("Pet.") and separate Memorandum of Law in support of his petition ("Pet'r Mem.") with supporting exhibits, both dated November 26, 2007 (Doc. No. 1); the Response to Petition for Writ of Habeas Corpus ("Ans.") and accompanying exhibits filed on February 29, 2008 by the Philadelphia District Attorney's Office (Doc. No. 9); Petitioner's Traverse Reply and Request for an Evidentiary Hearing dated March 24, 2008, with appended exhibits ("Pet'r Trav.") (Doc. No. 6); and Petitioner's motion dated May 20, 2008 seeking to expand the record, requesting an evidentiary hearing, and/or seeking stay proceedings to return to state court with his new evidence (Doc. No. 7).  We have also consulted, as necessary, the state court record items received on June 18, 2008 from the Clerk of Quarter Sessions of the Philadelphia Court of Common Pleas ("St. Ct. Rec.").

We note that the following documents discussed in some detail in this Report are reproduced in the papers filed in this court and may be more easily located as follows: Hodges's counseled brief to the Superior Court on direct review (Ans. at Ex. E); the Superior Court's November 15, 2004 opinion on direct review (Pet'r Mem. at Ex. 1); Hodges's *pro se* brief to the Superior Court on PCRA review (Ans. at Ex. G); the Superior Court's June 14, 2007 opinion on PCRA review (Pet'r Mem. at Ex. 3); the notes of testimony of May 6, 2003, when Petitioner entered his guilty plea and was sentenced (unnumbered exhibit to Pet'r Mem.; Ans. at Ex. C).

Respondents have also asked us to supplement the Quarter Sessions file with notes of testimony of May 5, 2003, which they identify as the first day of the trial in this matter, "so that [this transcript] becomes a part of the permanent state court record as well."  (Doc. No. 5.)  As Petitioner also attached a copy of this transcript as an exhibit to one of his filings and we have no reason to question its authenticity, we have considered the transcript in our review here.  We do not believe it proper, however, for us to alter the record that we received from the Clerk of Quarter Sessions, which has been certified as that office's original and complete file.  We have not, therefore, complied with Respondents' request that we associate that transcript with the Quarter Sessions file.

outside the restaurant, Postley remained at the door, and Petitioner Hodges, armed with an assault-type weapon, entered the restaurant and shot 21-year-old Keith Fields in the back of the head. Postley then entered the restaurant and, with a revolver, shot repeatedly at 18-year-old James Elliott. Hodges, Postley, and Baker then ran.  The Commonwealth's investigation suggested that the shooting stemmed from a dispute Hodges had with Fields and Elliott over drug activity.  Just before he entered the restaurant with his weapon, Hodges was heard by witnesses stating that he was going to get his gun.  (N.T. 10/2/00 at 6-8.)  Hodges was arrested in May 1999.  (*Id.* at 11.)  The Commonwealth thereafter filed a notice of aggravating circumstances supporting imposition of the death penalty.

The case was listed for a negotiated guilty plea hearing on October 2, 2000.  At that proceeding, Hodges was represented by Fortunato Perri, Jr., Esquire.  In response to questioning by the Honorable Jane Cutler Greenspan, he testified that, *inter alia*: he was then 18 years old, he went through the 11th grade in school, he did not suffer from any mental illness, he understood the charges brought against him and the charges to which he was agreeing to plead guilty, and that his plea was not the result of any force or threats.  (N.T. 10/2/00 at 2-5.)  The prosecutor provided the above-recited factual basis for the conviction on two counts of *first*-degree murder and the additional conspiracy and PIC crimes.  Upon entering his plea on October 2, Hodges waived a pre-sentence evaluation and mental health evaluation.  (*Id.* at 10.)  He elected not to address the court prior to imposition of sentence.  (*Id.* at 12.)  Judge Greenspan then sentenced him to two consecutive terms of life imprisonment and additional terms of years on the PIC and conspiracy convictions.  (*Id.*)

At some point shortly thereafter, defense counsel learned that his client, in fact, had been a few months shy of his sixteenth birthday at the time of the offense and therefore, as a matter of law,

3

was not eligible for the death penalty.  In addition, Hodges advised his attorney that he wanted to withdraw his plea and go to trial.  (N.T. 10/13/00 at 2-7.)  Judge Greenspan received briefing and considered whether Hodges met the standard for a post-sentence plea withdrawal, which required him to demonstrate that the denial of his request would result in a manifest injustice.  "In light of the evidence and defendant's acknowledgment of his overwhelming guilt," she denied his request. *Commonwealth v. Hodges*, No. 746, July Term 1999 at 2-3 (Phila. Ct. Comm. Pl. Jan. 11, 2001). (*See also* N.T. 10/13/00 at 5 (Judge Greenspan's comment that she heard the evidence in the case from trial against co-defendant "and this is not a case in which there is even a shadow of a doubt as to Mr. Hodges' guilt").)  The Superior Court, however, reversed, permitting the plea to be withdrawn in light of the fact that it was based on a perceived maximum sentence (death) that the court could not, in fact, have imposed had the case proceeded to trial.  *Commonwealth v. Hodges*, 789 A.2d 764 (Pa. Super. Ct. 2002).  (Pet. at 5; Ans. at 3.)

Hodges obtained new counsel, Jack McMahon, Esquire, and the matter proceeded to a trial by jury before Judge Greenspan.  On the second day of trial, after the jury had been seated, opening arguments were given, and the presentation of testimony had begun, Hodges announced that he wished to plead guilty.  *See Commonwealth v. Hodges*, No. 1602 EDA 2003 at 2 (Pa. Super. Ct. Nov. 15, 2004) (reciting history).  (*See also* Doc. No. 5 & Doc. No. 6 at Ex. 2 (N.T. 5/5/03, first day of trial).)  He was again asked if he suffered from any mental illness and denied that he was under the effects of any drugs, alcohol or medication.  (N.T. 5/6/03 at 4-6.)  He also confirmed that he had not been forced or threatened and that he was entering the plea of his own free will.  (*Id.* at 10.)  The prosecutor recited the factual basis for the plea, including the anticipated testimony of co-conspirator Brandon Baker, who had pled guilty to two counts of third-degree murder and gone on to testify in

4

the trial of co-conspirator Walter Postley.  (*Id.* at 11-18.)  This time, the plea offered to Hodges was to two counts of *third*-degree murder, conspiracy and PIC, with the Commonwealth's recommendation of an aggregate sentence of 30 to 80 years.  (*Id.* at 6-9.)  Judge Greenspan accepted the plea and, after Hodges again waived a pre-sentence mental health assessment, promptly sentenced him in accordance with the recommendation to consecutive terms of 15 to 40 years on the two murder bills, with a term of 10 to 20 years on the conspiracy charge and 2 to 5 years on the PIC charge, both of which were to run concurrent to the sentences on the murder convictions.  (*Id.* at 19-20, 25.)

Attorney McMahon filed a notice of appeal from the May 6, 2003 judgment of sentence on behalf of Hodges on May 20, 2003.  (St. Ct. Rec. Doc. D-7.)  A short time later, however, he sought leave to withdraw as counsel, citing a potential conflict, "since [Hodges] wants to withdraw his guilty plea" and McMahon had represented him at the plea hearing.  (Mot. to Withdraw as Counsel, filed in Pa. Super. Ct. June 25, 2003 (appended to St. Ct. Rec. Doc. D-10).)[2]  New counsel, Douglas L. Dolfman, Esquire, was appointed to represent Hodges on appeal.  Hodges asserted on appeal that he should have been permitted to withdraw his second guilty plea in light of pressure he felt from Attorney McMahon (based on McMahon's assessment that the outcome of his trial did not appear to be favorable) and because he claimed that he was unaware that his 15- to 40-year sentences on the

---

[2] In his brief to the Superior Court on direct review, Hodges stated that he "filed a subsequent petition to withdraw his guilty plea on May 6, 2003.  The trial court denied this request."  Br. for Appellant, *Commonwealth v. Hodges*, Pa. Super. Ct. No. 1602 EDA 2003 at 3 (Apr. 13, 2004).  The state court record, however, does not reflect any such filing.  It appears that Judge Greenspan's opinion dated June 24, 2003 in support of her judgments of sentence addressed the question of whether Hodges should be permitted to withdraw his plea again based on a petition from McMahon to withdraw as counsel which indicated that Hodges wanted to withdraw his plea.  *See Commonwealth v. Hodges*, No. 0746 3/3, July Term, 1999 at 3 & n.1 (Phila. Ct. Comm. Pl. June 24, 2003).  (Ans. at Ex. E.)

murder bills would run consecutively.  (Pet. 5-6; Ans. at 4-5.  *See also* Br. for Appellant, *Commonwealth v. Hodges*, Pa. Super. Ct. No. 1602 EDA 2003 at 8-9 (Apr. 13, 2004).)  Finding that Hodges had failed to establish prejudice amounting to manifest injustice, the Superior Court affirmed.  *Commonwealth v. Hodges*, No. 1602 EDA 2003 (Pa. Super. Ct. Nov. 15, 2004).  Hodges did not seek allowance of appeal of that decision in the Pennsylvania Supreme Court.  (Pet. at 6; Ans. at 6.)

On or about November 9, 2005,[3] he sought relief, *pro se*, under the Pennsylvania Post-Conviction Relief Act, 42 Pa. Cons. Stat. §§ 9541-46 ("PCRA"), asserting claims of ineffective assistance of counsel relating to trial preparation, the entry of the guilty plea, and his right to allocution.  (PCRA Pet. at 2, 3a (St. Ct. Rec., Doc. D-14).)  Judge Greenspan, to whom the PCRA matter was assigned, appointed counsel, John M. Belli, Esquire (Hodges's fourth attorney), who filed a *Finley* letter and sought leave to withdraw.  (Ans. at 6.)  Judge Greenspan provided notice to Hodges pursuant to Rule 907 of the Pennsylvania Rules of Criminal Procedure of her intention to dismiss the petition without further proceedings.  Hodges filed a response to the notice, and Attorney Belli addressed that response at a listing of the case on July 13, 2006.[4]  (Ans. at 7.)  The court denied

---

[3] The PCRA petition contained in the state court record was marked "received" by the PCRA unit on November 30, 2005.  It is accompanied by a certification by Hodges that he was turning the filing over to prison officials for mailing on November 1, 2005.  Although we do not see it in the state court record, the Superior Court's June 14, 2007 opinion states that "the certified record" includes a post-mark for this filing dated November 9, 2005.  The Superior Court considered the PCRA action to be initiated as of that date.  *See Commonwealth v. Hodges*, No. 2514 EDA 2006 (Pa. Super. Ct. June 14, 2007) at 3 n.1.  (Pet'r Br. at Ex. 3.)

[4] Respondents attached a transcript of the July 13, 2006 proceedings held in this case as Exhibit F to their response.  It appears that this transcript was generated on February 14, 2008.  (*See* Ans. at Ex. F, p. 16.)  This transcript is not contained in the Quarter Sessions file that we received.  Petitioner was not present for the hearing held on that date.  He characterizes this transcript as after-discovered evidence.  (Pet'r Trav. at 1.)  He also describes the proceeding as an evidentiary hearing

6

and dismissed the PCRA petition that day, however, and permitted counsel to withdraw.  (Pet'r Br. at Ex. 2; Ans. at 7 & Ex. H.)  Following a *pro se* appeal (*see, e.g.,* Ans. at 8 & Ex. G), the Superior Court affirmed.  (Pet'r Br. at Ex. 3; Ans. at Ex. H.)  The Pennsylvania Supreme Court denied Hodges's *pro se* petition for allowance of appeal on November 20, 2007.

Hodges initiated the present action on November 26, 2007.  (Pet. at 11.)[5]  The Philadelphia District Attorney's Office filed its response on February 29, 2008, contending that the claims asserted in the petition and accompanying brief are defaulted and/or lack merit.  (Ans. at 9.) Respondents' answer appended as exhibits copies of many of the documents contained in the Quarter Sessions file and/or submitted to the Superior Court.  Respondents subsequently submitted a newly-transcribed volume of the proceedings of the first day of trial.  (Doc. No. 5.)  Hodges submitted a "traverse-reply" on March 24, 2008.  (Doc. No. 6.)  He subsequently filed a motion pursuant to Rule 7 of the Rules Governing § 2254 Proceedings seeking to "expand the record" and supplement his petition with affidavits from two persons who had not previously provided any affidavits in this matter (his mother and a purported eyewitness to the murders), as well as another affidavit from a person (his grandfather) who had provided an affidavit already.  (Doc. No. 7 at 1-2.)  In the alternative, he requested a stay of proceedings "to present his new claims' evidence to the state court," referring to the newly-obtained affidavits and the transcripts of two proceedings that

_____

(*id.* at 1, 11), although it is apparent from the transcript that the proceeding was more in the nature of an oral argument or a status conference.

    [5] As Respondents recognize, pursuant to *Burns v. Morton*, 134 F.3d 109 (3d Cir. 1998), a *pro se* habeas petition from a prisoner is deemed filed as of the date it was delivered to prison officials for mailing to the court.  (Ans. at 8-9 n.4.)  In that Hodges dated his signature to the petition as November 26, 2007, and in the absence of any evidence that he delivered his petition to prison officials for mailing at a later date, we will consider for these purposes that his petition was "filed" on November 26, 2007.

Respondents recently had obtained in conjunction with their response to this petition.  (*Id.* at 5.)
Respondents have not filed a response to Petitioner's June 6, 2008 motion.

## II.     MOTION TO EXPAND THE RECORD; MOTION FOR A STAY

Before addressing the substantive grounds raised in the petition, we must first address
Petitioner's request that he be permitted to expand the record "and/or in the alternative" that these
proceedings be stayed and that the matter be held in abeyance while he pursues relief in the state
court.  (Doc. No. 7.)

### A.     Motion to Expand the Record

Hodges invokes Rule 7 of the Rules Governing Section 2254 cases as the basis for his request
to "expand the record."  (Doc. No. 7 at 1.)  Later in his motion he phrases his request as seeking
"permission to supplement his initial writ of habeas corpus" with the affidavits appended to his
motion, which he characterizes as "after-discovered evidence" and evidence demonstrating his
innocence.  (*Id.* at 2, 4.)  He contends that he exercised reasonable diligence in presenting this
evidence and that he would have been able to present it to the state court had Respondents and/or
Hodges's prior counsel provided him with the new transcripts (i.e., of proceedings hold on May 5,
2003 and July 13, 2006), which he contends "allowed petitioner to beg[i]n his investigation."  (*Id.*
at 4.)

Rule 7 permits *the judge* to "direct the parties to expand the record by submitting additional
materials relating to the petition."  Rule 7(a) fol. 28 U.S.C. § 2254.  It does not empower *a party* to
unilaterally "expand the record."  *See also* Advisory Committee Notes to Rule 7 (explaining rule
permits judge to order record to be expanded to dispose of those petitions not summarily dismissed
and without time and expense required for evidentiary hearing).  Therefore, we conclude that Rule

8

7 does not provide a basis for us to consider the three new affidavits in conjunction with our review of his petition.

Petitioner also understands the implication of his request to supplement his claims with this additional evidence given the time bar implemented in the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"). AEDPA allows for a later commencement of the limitation period for claims as to which the factual predicate could not previously have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1)(D) (providing for a later start date based on when "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence"). Petitioner invokes this provision and argues that the new affidavit evidence could not have been discovered prior to Respondents' provision to him, on February 29 and March 10, 2008, of the new transcripts and, therefore, that he should be permitted to have this evidence considered now. (Doc. No. 7 at 3-4.) For the reasons set out below, we disagree.

### 1.    Affidavit of Frida Bounce

Petitioner presents an affidavit from a Ms. Frida Bounce dated March 25, 2008. Ms. Bounce states that she was across the street from the pizza shop at the time of the shooting, heard the gunfire, and saw three men run from the restaurant. She states that Hodges, whom she knew, was not one of the three. She states that, after speaking with Petitioner's mother on March 15, 2008, she decided that she "could no longer keep silent while knowing that [Hodges] has been in jail for a crime that he did not commit." (Bounce Aff., Mar. 25, 2008 (Doc. No. 7 at Ex. 3).)

Hodges does not describe why this evidence could not have been discovered earlier or what prompted the discovery of it now, other than an encounter between this witness and Petitioner's mother during which the subject of Hodges's incarceration came up. While his discussion of this

9

evidence refers to a portion of the newly-transcribed testimony of May 5, 2003 (the first day of his trial), that testimony does not provide an excuse for the untimely presentation of this evidence. Moreover, Hodges does not describe how this evidence relates to any of the claims of his petition; he simply asserts that it entitles him to federal habeas corpus relief "in the interest of justice." (Doc. No. 7 at 2.)  We fail to see how this evidence relates to any of the claims presented in his petition. We do not accept the proposition advanced by Petitioner (*see id.* at 3) that this affidavit entitles him to a new trial to withdraw his guilty plea.

Similarly, we do not believe this affidavit gives rise to an entitlement to the evidentiary hearing Petitioner seeks in this Court.  In cases in which the applicant for federal habeas relief "has failed to develop the factual basis of [the] claim in State court proceedings," an evidentiary hearing in federal court is explicitly prohibited by AEDPA unless the petitioner establishes an exception set forth in the statute.  *See* 28 U.S.C. § 2254(e)(2).  With respect to claims relying on a new factual predicate, a hearing would be available only if that factual predicate "could not have been previously discovered through the exercise of due diligence" *and* if "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense." *Id.*  We do not view the proffered evidence set forth in the Bounce affidavit to satisfy either prong.  Therefore, we will neither permit the petition before us to be supplemented to include a claim based upon this affidavit nor will we order an evidentiary hearing based upon this affidavit.[6]

---

[6] To the extent that Petitioner also might be seeking to advance a freestanding actual innocence claim through this affidavit, inasmuch as he claims that this evidence "entitles Petitioner to federal relief" (Doc. No. 7 at 2), we conclude that he has not proffered a sufficiently persuasive demonstration of innocence.  *See House v. Bell*, 547 U.S. 518, 554-55 (2006) (noting that Supreme Court has not decided whether freestanding claim may be asserted on habeas review and that such

### 2. (Second) Affidavit of Cephel Hodges[7]

Another affidavit that Petitioner requests we consider is an affidavit dated March 26, 2008 from his grandfather, Cephel Hodges.  Mr. Hodges purports to speak for himself and his late wife that "there has never been any drug dealing in front of our residence that caused my grandson to commit murder behind. . . .   We have never had a problem with any drug activity on our block let alone in front of our house.  That accusation is unfounded and not true."  (C. Hodges Aff., Mar. 26, 2008 at ¶ 1 (Doc. No. 7 at Ex. 4).)

Petitioner explains that he submits this affidavit "to refute[] any allegations of drug dealing being conducted in front of" his grandparents home, responding to the motive suggested by the prosecution (referred to in the PCRA argument of July 13, 2006) that the shooting was in response to the deceased selling drugs in front of the grandparents' home.  (Doc. No. 7 at 2-3.) Petitioner does not, however, tie this evidence in to any of the claims in his petition.  As the motive for the shooting is not relevant to the claims before us, this difference of opinion about whether or not there was, in fact, drug-dealing taking place in front of Mr. Hodges's house is collateral and immaterial.  This evidence also appears to be neither new nor sufficiently demonstrative of Petitioner's innocence to support any possible new, independent claim for habeas relief or to satisfy the standards set forth in 28 U.S.C. § 2254(e)(2) for an evidentiary hearing.  We see no basis for this affidavit to be considered in conjunction with the petition.  Therefore, we will neither permit the petition before us to be supplemented to include a claim based upon this affidavit nor will we order an evidentiary hearing

hypothetical relief would be available only in capital cases and subject to an "extraordinarily high" evidentiary threshold).

[7] Mr. Hodges also provided an earlier affidavit that was part of the state court record and is discussed below.

based upon it.

### 3.    Affidavit of Venness Hodges

The final item that Hodges asks be considered is an affidavit dated March 25, 2008 from his mother, Venness Hodges.  She attests that her son and her whole family has always protested his innocence and that she informed Attorney McMahon that her son "suffered from mental disorders." (V. Hodges Aff., Mar. 25, 2008 at ¶ 1 (Doc. No. 7 at Ex. 5.).)  She also takes issue with a statement made by PCRA counsel at the hearing on July 13, 2006 in which he advised Judge Greenspan that she was present in the courtroom at that time when in fact, she contends, she was not.  (*Id.* at ¶ 2.)

Petitioner fails to demonstrate how this evidence is both new and material to his claims. While Ms. Hodges's affidavit bolsters Petitioner's claim that counsel was advised he "suffered from mental disorders" and that counsel allegedly failed to properly incorporate that into a defense, Ms. Hodges's contribution on this subject could have been made in state court.  The only aspect of her affidavit that is "new" appears to be in response to Petitioner's recent review of the transcript of the July 13, 2006 hearing at which his PCRA petition was dismissed.  The presence of Ms. Hodges was noted at that proceeding insofar as the court permitted counsel to withdraw and wanted to ensure that Petitioner would understand his appeal rights as to the dismissal of his PCRA petition.  (*See* N.T. 7/13/06 at 13 (Ans. at Ex. F).)  Since Petitioner did appeal that dismissal and received consideration from the Pennsylvania Superior Court, the presence or absence of his mother from court that day is of no consequence.  This collateral issue provides no basis for an expansion of the record or further consideration of Ms. Hodges's affidavit.

In light of the foregoing, we recommend that Petitioner's motion to expand the record be denied.

### B.     Motion to Stay

Alternatively, Hodges requests that consideration of his federal habeas petition be stayed and the matter held in abeyance to give him an opportunity to seek relief in the state court based on these three new affidavits and the two new transcripts.  He asserts that he filed a protective PCRA petition in state court for this purpose on April 30, 2008.  (Doc. No. 7 at 5.)

The United States Supreme Court has endorsed the use of a "stay and abey" procedure in appropriate cases involving "mixed" habeas corpus petitions.  *See Rhines v. Weber*, 544 U.S. 269 (2005).  A petition is "mixed" when it contains both claims that have been subject to one complete round of the state appellate process and claims that have not.  In order for all of the claims in the petition to be adjudicated at one time, district courts had often dismissed the petitions, envisioning that the petitioner would be able to re-file in federal court after concluding proceedings in state court on the once-unexhausted claims.  Following the enactment of AEDPA, however, petitioners risked being precluded on timeliness grounds from re-filing in federal court.  The "stay and abey" procedure — in which the federal petition is held in abeyance while the petitioner pursues further relief in state court — seeks to balance the interest, grounded in notions of comity and federalism, that the state courts must have the first opportunity to decide a petitioner's claims, with the interest in finality reflected in the AEDPA one-year statute of limitations.  The Supreme Court has cautioned, however, that "[s]tay and abeyance, if employed too frequently, has the potential to undermine" the purposes of AEDPA: "[s]taying a petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings" and also "undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." *Rhines*, 544 U.S. at 277.  As a result, staying

proceedings and holding a "mixed" federal habeas corpus petition in abeyance is appropriate only when: (1) the court determines that there was good cause for the petitioner's failure to have earlier exhausted the claims on which he seeks federal habeas relief in state court; (2) the unexhausted claims are potentially meritorious (or, put another way, are not plainly without merit); and (3) there is no evidence that the petitioner engaged in intentional dilatory tactics. *Id.* at 277-78.

We conclude that a stay of these proceedings is not warranted in that we find no good cause for the failure of Petitioner to have earlier raised any claims based on this evidence and because the only evidence that purports to be truly new — the account of Frida Bounce, based on her sudden decision to come forward on Hodges's behalf — is not sufficiently related to any cognizable habeas claim. *See also infra* n.6 (describing standard for any potentially cognizable freestanding innocence claim and concluding standard not met here). Granting a stay of proceedings here would frustrate AEDPA's objectives of encouraging finality and streamlining federal habeas proceedings.

As we will not recommend that this petition be held in abeyance, we proceed to consider Hodges's petition, after first setting forth the standards by which such review is guided.

## III.    LEGAL STANDARDS

### A.    Exhaustion of State Remedies, Procedural Default

A prerequisite to the issuance of a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment is that the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In order for a petitioner to satisfy this requirement and give the state courts "one full opportunity to resolve any constitutional issues," he must have "fairly presented" the federal claim to the state courts "by invoking one complete round of the established appellate review process." *Picard v. Connor*, 404 U.S. 270, 275 (1971);

14

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  This requirement ensures that state courts have "an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981).  If a bypassed state remedy is no longer available because it is time-barred due to a state limitations period, the petitioner will be deemed to have procedurally defaulted those claims.  *O'Sullivan*, 526 U.S. at 848.  Where a claim is procedurally defaulted, it cannot provide a basis for federal habeas relief unless the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law, or [unless he] demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

###### B.      Standard for Issuance of the Writ

Pursuant to AEDPA, in cases where the claim presented in a federal habeas petition was adjudicated on the merits in the state courts, the petition shall not be granted unless the state court adjudication —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has made it clear that a habeas writ may issue under the "contrary to" clause of Section 2254(d)(1) only if the "state court applies a rule different from the governing rule set forth in [United States Supreme Court] cases or if [the state court] decides a case differently than [the United States Supreme Court has] done on a set of materially indistinguishable facts."  *Bell v.*

*Cone*, 535 U.S. 685, 694 (2002).  A writ may issue under the "unreasonable application" clause only where there has been a correct identification of a legal principle from the Supreme Court but the state court "unreasonably applies it to the facts of the particular case." *Id.*  This requires the petitioner to demonstrate that the state court's analysis was "objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).  In addition, this standard obligates the federal courts to presume that the "state courts know and follow the law" and precludes the federal court from determining the result of the case without according all proper deference to the state court's prior determinations. *Id.* at 24.

### C.      Standard for Ineffective Assistance of Counsel Claims

Several of the claims on which Hodges seeks relief involve the assertion that his Sixth Amendment rights were violated due to deficient representation by counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1994), the Supreme Court set forth a two-prong test that a petitioner must satisfy before a court will find that counsel did not provide effective assistance consistent with the Sixth Amendment.  Under this test, a petitioner must show: (1) that his attorney's representation fell well below an objective standard of reasonableness; and (2) that there exists a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different.  466 U.S. at 688-96.

To satisfy the first prong of the *Strickland* test, a petitioner must show that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  In evaluating counsel's performance, a reviewing court should be "highly deferential" and must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  Moreover, there is a "strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant [or petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted). To satisfy the second prong of the *Strickland* test, a petitioner must show that there is a reasonable probability that, were it not for counsel's errors, the outcome of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id.* Counsel cannot be ineffective for failing to pursue meritless claims or objections. *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Finally, in the context of a challenge to a guilty plea based on ineffective assistance of counsel, the Supreme Court has held that "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

## IV. DISCUSSION

Hodges asserts in his petition that various attorneys who had represented him were constitutionally ineffective for the following reasons: (1) for inducing him to plead guilty when he alleges he "was alibied at the time of this crime," as well as for failing to call the alleged alibi witnesses (Pet. at 9, ¶ 12.A); (2) for failing to interview and call fact witnesses to offer exculpatory evidence (Pet. at 9, ¶ 12.B); (3) for failing to locate, investigate, and interview eye witnesses "who would have testified to exculpatory evidence" (Pet. at 9, ¶ 12.C); and (4) failing to present his mental health records in conjunction with the request to withdraw the guilty plea, on the theory that he "is mentally ill and [was] used as the fall guy" (Pet. at 9, ¶ 12.D). He asserts in his fifth ground for relief that his due process rights were violated when the state court did not permit him to withdraw his

guilty plea and did not give him a hearing regarding "his alibi/eye/fact witness proving his innocence" and in light of the alleged ineffective assistance of counsel that he received. (Pet. at 10).

Respondents assert that certain claims, or aspects thereof, are unexhausted and procedurally defaulted. As to each claim, then, we consider whether Petitioner has complied with his obligation to have fairly presented to the state court the claims he raises here. For those claims where we conclude that review is not precluded by these procedural requirements, we consider the merits of those claims. Ultimately, we conclude that relief is not warranted on any of the claims.[8]

## A.   Ground One: Counsel Inducing Involuntary Plea and Failing to Interview/Call Alleged Exculpatory Witnesses

Petitioner's first claim for relief is based upon two rather related theories: first, that "trial and appellate counsel were ineffective for inducing Petitioner to plead guilty when Petitioner was alibied at the time of this crime" (Pet. at 9, ¶ 12.A), and second, that "counsels [sic] were ineffective for failing to call the alibi witnesses." (*Id.*)[9] His accompanying memorandum of law, to which he refers us for the facts supporting this ground of the petition (*see* Pet. at 9, ¶ 12.A), postures this claim as "trial counsel and appellate counsel were unconstitutionally ineffective for failing to call alibi witnesses Nahtesha Baxter, and Arn[e]eta Bowen, who would have testified that Petitioner was with them at the time that this crime was committed." (Pet'r Mem. at 4 (first subheading in "Argument"

---

[8] Respondents make note of "the federal time-bar" in their response (*see* Ans. at 8-9 n.4), but do not contend that claims raised in the petition are untimely under the standards set forth at 28 U.S.C. § 2244(d). Our review of the record also indicates that this federal habeas petition was timely brought.

[9] In his accompanying memorandum of law, he alleges that counsel at his first trial, Fortunato Perri, Jr., told him to plead guilty even after Hodges told him that he was not involved in the incident. (Pet'r Mem. at 4.) In that Petitioner was ultimately allowed to withdraw his first guilty plea, however, we do not find any allegations concerning the performance of Attorney Perri to be material.

18

section).)  Petitioner explains in his brief that he informed counsel at his second trial, Attorney

McMahon, that he was elsewhere with his girlfriend and her aunt at the time of the crime.  (*Id.* at 5

(also referring to appended affidavits of these witnesses dated October 25, 2005).)  He contends that

his guilty plea (presumably in 2003):

> was involuntar[il]y coerced, and induced by fear, mental health
> disorders, duress, threats from trial counsel that petitioner was going
> to jail to serve two life sentences.  Trial Counsel never prepared a
> defense for petitioner.  And never interviewed any defense witnesses
> in this case.  Trial Counsel never investigated petitioner[']s mental
> health problems and alibi defense and waited until the day of trial to
> tell petitioner to plead guilty because he (counsel) was not prepared
> to fight the case because of other cases that he was working on.  This
> happened right before counsel requested to see the court at sidebar
> that counsel informed petitioner of this.

(*Id.*)[10]  In his traverse, he refines his description of this claim further, characterizing the

ineffectiveness as stemming  from counsel "inducing Petitioner to plead guilty when trial counsel

[k]new that Petitioner had alibi witnesses to testify that Petitioner was with them at the time that this

crime was being committed by the real perpetrators."  (Pet'r Trav. at 4.)

Respondents contend that the claim stated as Ground One has been defaulted because this

"blend" of two claims — failing to call the two alibi witnesses and inducing Petitioner to plead guilty

involuntarily when he had an alibi — was not presented in this manner to the state courts but rather

was presented as two separate claims at two separate times.  (Ans. at 15.)  Alternatively, however,

---

[10] In that Hodges describes events occurring at "the day of trial," it appears that Hodges's
claims principally concern his second guilty plea, entered when he was represented by Attorney
McMahon.  While he also alleges that counsel at his first trial, Attorney Perri, told him to plead
guilty even after Hodges told him that he was not involved in the incident (Pet'r Mem. at 4), that
guilty plea was entered before any trial has begun.  Again, we do not view any ineffectiveness in that
representation as having any bearing on this habeas petition, as the conviction that followed from
that representation was vacated by the Superior Court.

Respondents assert that both claims lack merit.  (*Id.* at 16.)

We interpret Hodges to be asserting that Attorney McMahon performed ineffectively by failing to prepare to call alibi witnesses and that, as a result of that allegedly ill-prepared defense, Hodges felt pressured to accept McMahon's recommendation of the guilty plea on the third-degree murder and other charges.  This claim implicates the conduct of counsel in preparing for trial and in counseling his client regarding the offered plea, particularly when Petitioner claims he advised counsel that he had an alibi, as well as the voluntariness of the plea Hodges ultimately entered.

We begin first by considering the extent to which Hodges has exhausted available state court remedies.  On direct review, Hodges asserted that he should have been permitted to withdraw his guilty plea, arguing that it was not entered "understandingly, intelligently and voluntarily" because, *inter alia*, "his attorney persuaded him to enter this plea after informing Mr. Hodges that the outcome of the case did not appear to be in their favor."  Br. for Appellant, *Commonwealth v. Hodges*, Pa. Super. Ct. No. 1602 EDA 2003 at 8-9 (Apr. 13, 2004).  Similarly, on PCRA review, he challenged, *inter alia*, the lower court's finding that his guilty plea was not induced; the finding that counsel was not ineffective for counseling him to plead guilty to a crime he says he did not commit; the finding that counsel was not ineffective for failing to call exculpatory witnesses; and asserting that counsel failed to explore mental health disorders that allegedly prevented him from "form[ing] the notion to plead guilty.  Especially to a crime he did not commit."  Br. for Appellant, *Commonwealth v. Hodges*, Pa. Super. Ct. No. 2514 EDA 2006 at 18 (Dec. 20, 2006).  *See also id.* at vi, 6-9, 15-17.

In light of the foregoing, we are satisfied that Hodges sufficiently presented to the state court the facts and legal theories on which he seeks relief on federal habeas review.  Accordingly, we proceed to consider the reasonableness of the state court's conclusion that counsel was not

ineffective with respect to the investigation into the purported alibi witnesses and then consider how that finding impacts upon the assessment of the validity of the plea entered by Hodges upon the advice of McMahon.

### 1. Performance of counsel with respect to alibi defense

Hodges challenges the performance of Attorney McMahon "for failing to call the alibi witnesses." (Pet. at 9, ¶ 12.A.) He claims that he informed counsel at his second trial that at the time of the crime, around 3:00 p.m. on February 28, 1998, "he was with his girlfriend Nahtesha Baxter and her aunt Arneeta Bowen at their residence . . . preparing to go to a party at club dances [sic] with Ms. Baxter." (Pet'r Mem. at 5.) He refers to sworn affidavits "attesting to this alibi evidence" that Ms. Baxter and Ms. Bowen provided, which were executed on October 25, 2005. (*Id.* at 5 & Exs. A, B.[11]) He contends that counsel did not interview any defense witnesses, investigate this alibi defense, or prepare any defense for him. (*Id.* at 5.)

---

[11] The original affidavits of Ms. Baxter and Ms. Bowen are appended as exhibits B and C to the original copy of Hodges's *pro se* PCRA petition in the Quarter Sessions file. (St. Ct. Rec., Doc. D-14.) Petitioner has appended copies of the affidavits to his memorandum of law as exhibits A and B.

Ms. Baxter's affidavit recounts that around 3:10 p.m. on the afternoon of the murder Hodges, her boyfriend, came to her aunt's house, where she was babysitting, and asked her out to a party that night. She described how she and Hodges eventually helped Ms. Bowen find another babysitter so that Ms. Baxter and Hodges could go to their party that evening. She contends that the process of convincing her aunt to let her go to the party occupied her and Hodges from 3:10 until 4:30 p.m. (Baxter Aff., 10/25/05.) Ms. Bowen's affidavit was largely consistent with that of her niece and also timed Hodges's arrival at her home, located at 37 N. Millick Street, to 3:15 p.m. (Bowen Aff., 10/25/05.)

According to one web-mapping program, the location of Ms. Bowen's home is approximately 0.86 miles from the address where the shootings took place. The Commonwealth's evidence, as recounted in the guilty plea colloquy, would show that the shootings took place around 3:13 p.m. (N.T. 5/6/03 at 11.)

Both affiants indicated that, had they been called upon at trial, they would have testified on Hodges's behalf that he was with them at the time of the shooting. Neither indicated whether or not they had spoken with Hodges's attorneys about the information they possessed.

With respect to this claim on PCRA review, the Superior Court reasoned:

> Herein, Appellant cannot establish plea counsel's ineffectiveness in this regard because he notably fails to establish that he informed plea counsel of the existence of the witnesses or that counsel otherwise should have known of their existence.  At the guilty plea colloquy, it was on the record that Appellant "had the benefit of speaking to his attorney on numerous occasions.  And had the benefit of having family members consult with the attorney and him."  N.T. Guilty Plea, 5/6/03, at 10.  Appellant then affirmed to the plea court that he was satisfied with plea counsel's representation.  *Id.* at 11.  Given that Appellant and members of his family had many consultations with counsel and that Appellant was satisfied with counsel's representation, the record refutes any position that counsel either knew or should have known of Appellant's purported alibi witnesses.

*Commonwealth v. Hodges*, No. 2514 EDA 2006 at 6 (Pa. Super. Ct. June 14, 2007) (concluding with footnote that "Appellant's alibi witnesses included his grandfather, his girlfriend, and his girlfriend's aunt").

Petitioner's arguments in this Court suggest that he believes that the Superior Court's resolution of this claim was unreasonable because that court denigrated the strength of his alibi witnesses with an improper basis.  (Pet'r Mem. at 6 (referring to Superior Court view that alibi defense "was suspect because the witnesses were friends or family," citing Superior Court opinion at pp. 5-6 & n.2).)[12]  He asserts that he was entitled to an evidentiary hearing to demonstrate that trial

---

[12] The Superior Court observed at footnote 2 of the opinion that the alibi witnesses were persons who were close to Petitioner, which further confirmed that, at the time of the guilty plea colloquy, neither Petitioner nor these witnesses believed they possessed exculpatory evidence, as it was placed on the record that Hodges had the benefit of speaking not only to his attorney but "of having family members consult with the attorney and him" before he entered his plea.  *Commonwealth v. Hodges*, No. 2514 EDA 2006 at 6 (Pa. Super. Ct. June 14, 2007) (quoting N.T. Guilty Plea, 5/6/03, at 10.  While Hodges suggests in his arguments before this Court that the Superior Court denigrated that value of these witnesses simply because they were friends or family and for that reason alone less credible (*see* Pet'r Mem. at 6-7), that does not appear to have been the

(continued...)

counsel had no explanation for his failure to have called these witnesses, particularly "after being directed to do so...." (Pet'r Mem. at 7.)

Neither the record before the state court nor the record before us includes any explanation from trial counsel, Attorney McMahon, for any "failure" by him to have investigated these witnesses before counseling his client to enter a guilty plea to the reduced charges. However, we do not believe that further factual development of the record was necessary to support the state court's reasonable application of *Strickland* in this case. We agree that the existence of these witnesses with this proposed testimony at the time of trial is highly implausible. As Judge Greenspan noted on PCRA review, the fact that such persons who were close to Petitioner would have permitted him to twice enter guilty pleas when possessed with information exonerating him was not credible. *See also Commonwealth v. Hodges*, No. 0746 3/3, July Term, 1999 at 3-4 (Phila. Ct. Comm. Pl. July 13, 2006). (Ans. at Ex. H-2.) Equally incredible is that evidence of such witnesses would not have been presented on direct appeal.[13] The state court's decision to credit Hodges's sworn colloquy statements — that he was satisfied with Attorney McMahon's performance and that he understood that he would have had the right at trial to call witnesses to testify for him (*see* N.T. 5/6/03 at 8, 10-11 ; (Written) Guilty Plea Colloquy at 2 (Ans. at Ex. D)) — was reasonable and provided a valid basis for rejecting Petitioner's subsequent, unsupported assertions regarding witnesses he would have

---

[12](...continued)
basis of the Superior Court's reasoning. Rather, the court appeared to have been emphasizing how unlikely it was that persons so close to Petitioner would permit him to twice enter guilty pleas when possessed with information exonerating him.

[13] While Petitioner elsewhere in his petition accuses Attorney Dolfman, his counsel on direct appeal, of ineffective assistance for failing to raise certain issues as to the ineffectiveness of Attorney McMahon, he provides no corroborating evidence (e.g., copies of correspondence) that he alerted Attorney Dolfman to these issues.

wished to have testify at trial.  We find nothing unreasonable in the state court's conclusion that

Attorney McMahon did not perform deficiently in not preparing to call these witnesses at trial.[14]

Moreover, Hodges cannot prevail on a *Strickland* claim in the context of a conviction based

on a guilty plea unless he can demonstrate with a reasonable probability that, but for counsel's

deficient performance, he would not have pleaded guilty but rather would have gone to trial.  The

Commonwealth was prepared with testimony of: a former girlfriend who saw him shortly before the

shooting in possession of a gun and then saw him in the company of his co-conspirators enter and

exit the pizzeria; another eyewitness who saw him enter and exit the pizzeria with his co-

conspirators; and co-conspirator Brandon Baker, who directly implicated him in the shooting.  (N.T.

5/6/03 at 13-17.)  These unprovoked murders subjected Hodges to two life sentences, as he was

subject to two convictions for first-degree murder.  By pleading guilty, he negotiated a term of 30

to 80 years of imprisonment.  Hodges pleaded guilty, twice, because it was a favorable outcome for

him.  He has failed to demonstrate that there was a reasonable probability of a more favorable

---

[14] In his reply brief, and with the benefit of the notes of testimony of the first day of trial that Respondents had transcribed following Petitioner's initial briefing, Petitioner points to a sidebar discussion referring to "several" potential witnesses that McMahon had identified for the prosecution, two of which were characterized as factual witnesses.  (N.T. 5/5/03 at 68-69.)  (Pet'r Trav. at Ex. 2.)  These witnesses were not identified by name on the record.  Petitioner now suggests that they were Ms. Baxter and Ms. Bowen and therefore that the Superior Court erred in finding that he failed to establish that counsel knew of the existence of these potential witnesses.  (Pet'r Trav. at 5.)  However, as the record does not identify the witnesses on McMahon's witness list, we cannot assume, as Petitioner does, that McMahon knew of Ms. Baxter and Ms. Bowen or that they informed him that they were prepared to testify in accordance with the affidavits they subsequently gave.  We note that Attorney McMahon's opening argument does not refer to any alibi witnesses.  (N.T. 5/5/03 at 24-30 (focusing on delay in eyewitness identification of Hodges, lack of physical evidence linking Hodges, lack of motive, and likelihood that Hodges would have committed brazen shooting in front of witnesses who knew him and would be able to identify him).  Therefore, the question that remains is whether Attorney McMahon's alleged failure to uncover these witnesses and/or prepare to have them testify at trial could constitute deficient performance under *Strickland* and whether Petitioner demonstrated prejudice in this context.

outcome for him had he gone to trial on the first-degree murder charges and presented the testimony of Ms. Baxter and Ms. Bowen.  Therefore, the state court's rejection of this ineffective assistance of counsel claim was not unreasonable.  This claim does not provide a basis for habeas relief.

### 2.    Other conduct by counsel bearing on voluntariness of guilty plea

As explained above, we also interpret Hodges to be asserting in his first ground for relief that Attorney McMahon performed ineffectively not only by allegedly failing to prepare to call alibi witnesses but also through threats which, combined with Hodges's mental health disorders and Hodges's insistence that he had an alibi, allegedly induced him to enter a guilty plea involuntarily.

It bears repeating that to be valid, a guilty plea must be knowing and voluntary.  *Brady v. United States*, 397 U.S. 742, 748 (1970).  This is required because a plea of guilty constitutes a waiver of several constitutional rights, including the Fifth Amendment right against compulsory self-incrimination and the Sixth Amendment rights to a jury trial and to confront one's accusers.  *Boykin v. Alabama*, 395 U.S. 238, 243 (1969).  To enter into a knowing and voluntary guilty plea, the defendant must be aware of the constitutional rights he is waiving by pleading guilty as well as the substance of the charges to which he is pleading guilty.  *See Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976).  His decision to plead guilty must be free from actual or threatened harm by the state or from mental coercion by the state that overbears his will.  *Brady*, 397 U.S. at 750.  However, a guilty plea is considered voluntary if it was motivated by the defendant's desire to accept the certainty or probability of a lower sentence rather than the possibility of a higher sentence if convicted after trial.  *Id.* at 751.  The defendant/petitioner has the burden of persuasion to establish that his plea was not knowing or voluntary.  *United States v. Stewart*, 977 F.2d 81, 84-85 (3d Cir. 1992).

Hodges's claim concerning the alleged inducement by McMahon that caused him to enter a guilty plea that was not voluntary was addressed by the Superior Court on the merits on direct review. The court provided the following description of the claim:

> Appellant raises the following issue on appeal: "Did the trial court err as a matter of law in denying [his] motion to withdraw his guilty plea on May 6, 2003?" Appellant's Brief at 4. Appellant claims that "due to the lack of knowledge of the true consequences of his decision, his guilty plea should be withdrawn and a new trial should be granted." *Id.* at 7. More specifically, Appellant asserts that he did not enter his latest plea voluntarily because his attorney persuaded him to enter it after informing him that the outcome of his trial did not appear to be favorable. . . . Although acknowledging his answers during the plea colloquy, Appellant avers that "he was merely doing so in response to the pressure that he felt at that very moment." *Id.* at 9. Appellant is entitled to no relief.

*Commonwealth v. Hodges*, No. 1602 EDA 2003 at 3 (Pa. Super. Ct. Nov. 15, 2004). The court determined, "based on the totality of the circumstances surrounding the entry of the plea," that Hodges's guilty plea was knowing, intelligent, and voluntary. *Id.* at 6. The court explained its rationale as follows:

> A review of the record in this case reveals that Appellant executed a written guilty plea form and that the trial court fully complied with procedural requirements for accepting Appellant's plea and engaged in a thorough on-the-record guilty plea colloquy with Appellant. In the written colloquy form, which was completed with the assistance of counsel, Appellant acknowledged that his plea was voluntary. He admitted that he was guilty of two counts of third-degree murder, as well as one count of criminal conspiracy and one count of PIC. He also acknowledged that, given his plea [to two counts of third-degree murder and the other charges], he faced a potential sentence of 125 years of imprisonment. As part of his written plea agreement, Appellant acknowledged that he would receive consecutive terms of fifteen to forty years of imprisonment for each murder in return for the Commonwealth's withdrawal of the first-degree murder charges. During the oral colloquy with the court, Appellant was again informed of the maximum sentence he could

26

> receive.  He further affirmed that no one had threatened or forced him
> to plead guilty, that he had reviewed the written guilty plea colloquy
> with his counsel and that he understood everything contained in the
> document.  Other than the negotiated sentence, Appellant also stated
> that no one promised him anything in return for his plea.  The
> prosecutor then incorporated the evidence that had already been
> presented at trial and recited the evidence that would have been
> presented had Appellant's jury trial continued.  Appellant then
> adopted the Commonwealth's version of the facts and pled guilty.

*Id.* at 5-6.  The court refused to accept the grounds stated by Hodges in his appeal that contradicted

the statements he gave while under oath at the plea colloquy, including that he was not threatened

into pleading guilty, was doing so of his own free will, and was satisfied with counsel's assistance.

*Id.* at 6.  As to the "pressure" Hodges felt from his attorney, the state court ruled as follows:

> Finally, even if we were to accept Appellant's argument that
> he decided to plead guilty due to pressure he felt at the moment of his
> plea, our disposition would not change.  "The mere fact that a
> defendant was 'under pressure' at the time he entered his guilty plea
> will not invalidate the plea, absent proof that he was incompetent at
> the time the plea was entered."  *Lewis*, 791 A.2d at 1234.  No such
> proffer had been made by Appellant in this case, and the certified
> record establishes otherwise.  Clearly, Appellant was faced with an
> unpleasant choice.  However, as we have stated:
>
>> The desire of an accused to benefit from a plea
>> bargain is a strong indicator of the voluntariness of his
>> plea.  Our law does not require that a defendant be
>> totally pleased with the outcome of his decision to
>> plead guilty, only that his decision be voluntary,
>> knowing and intelligent.
>
> *Pollard*, 832 A.2d at 523, 524 (citations omitted).  In pleading guilty
> in the present case, Appellant avoided a trial and probable conviction
> for two counts of first-degree murder.  The fact that Appellant felt
> "pressure" when making his decision to plead guilty does not
> invalidate his plea that the record conclusively establishes was
> entered by him knowingly, voluntarily and intelligently.  *Lewis,*
> *supra.*  Thus, as Appellant has failed to establish "manifest injustice,"
> the trial court properly denied his motion to withdraw his guilty plea.

*Id.* at 7-8.

As discussed above, the AEDPA standard precludes us from granting relief on this claim unless we determine that the Superior Court's resolution involved an unreasonable interpretation of the relevant constitutional principles.  Having reviewed the guilty plea colloquies (*see* Ans. at Exs. C & D) and considering the totality of the circumstances, we find nothing unreasonable in the state court's conclusion that Hodges entered his plea knowingly and voluntarily.  It is evident that the state court considered the assertions Hodges makes to this Court: that he felt pressured to plead guilty because his attorney could not present a strong defense.  (*See, e.g.,* Pet'r Mem. at 5.)  We are not persuaded by Petitioner's assertions — also made in the state court (although not until PCRA review) — that he suffered from "mental health disorders" that impacted upon either available defenses or his competency to make a knowing, intelligent, and voluntary plea, particularly in the absence of any evidentiary support concerning those "disorders."[15]   Attorney McMahon's involvement in counseling Hodges to accept an offer to plead guilty to two third-degree murder charges in exchange for the prosecution dismissing the first-degree charges did not constitute deficient performance and did not prejudice Hodges.  The state court's rejection of this claim of ineffective assistance of trial counsel by allegedly inducing Hodges's guilty plea was not an unreasonable application of the *Strickland* standard.[16]

---

[15] These allegations are more directly implicated by the allegations set forth as Ground Four of Hodges's petition, which is where we discuss them in greater detail.

[16] We are also mindful that the Supreme Court instructed in *Strickland* that the proper measure of attorney performance looks to the "reasonableness under prevailing professional norms." *Strickland.* 466 U.S. at 688-89.  One source of such norms, the ABA's Model Code of Professional Responsibility, provides that "[a] defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable."  ABA Model Code of Professional Responsibility, Ethical Consideration 7-7 (1992).  Similarly, a manual prepared as part of a joint project of the American College of Trial Lawyers, the National Defender Project of the

(continued...)

### 3.    Ineffectiveness claim as to appellate counsel

Hodges's petition attributes ineffectiveness for inducing him to plead guilty when he was alibied and for failing to call the alibi witnesses to both "trial *and appellate* counsel." (Pet. at 9, ¶ 12.A (emphasis added).)  In his brief, he explains somewhat more fully that appellate counsel, who was Attorney Dolfman, performed deficiently in not raising trial counsel's ineffectiveness regarding the calling of the alibi witnesses and in not presenting mental health records on appeal. (Pet'r Mem. at 6.)  Respondents contend that all of Hodges's claims concerning appellate counsel are defaulted because they were not fairly presented in the state court but, in any event, lack merit. (Ans. at 34-36.)

The Superior Court did not address this claim on PCRA review. *See Commonwealth v. Hodges*, No. 2514 EDA 2006 (Pa. Super. Ct. June 14, 2007).  It was, however, part of the claim presented as the second argument in Petitioner's *pro se* brief on appeal to the Superior Court on PCRA review. *See* Br. for Appellant, *Commonwealth v. Hodges*, Pa. Super. Ct. No. 2514 EDA 2006 at vi, 14, 15-16, 18 (Dec. 20, 2006).  We will assume for these purposes that Hodges's briefing on this point fairly presented to the Superior Court a claim that Attorney Dolfman was ineffective for not litigating a claim regarding Attorney McMahon's alleged ineffectiveness for inducing his guilty plea. *Id.* at 16.

---

[16](...continued)
National Legal Aid and Defender Association, and the ALI-ABA Committee on Continuing Professional Education notes that while "[t]he decision whether to plead guilty . . . must ultimately be left to the client's wishes," "[c]ounsel may and must give the client the benefit of counsel's professional advice on this crucial decision; and often counsel can protect that client from disaster only by using a considerable amount of persuasion to convince the client that a plea which the client instinctively disfavors is, in fact, in his or her best interest."  Anthony G. Amsterdam, 1 *Trial Manual 5 for the Defense of Criminal Cases* § 201 at 339 (1988) (citation omitted). *See also Boria v. Keane*, 99 F.3d 492, 496-97 (2d Cir. 1996) (citing these authorities).

29

In light of the discussion above concerning the voluntariness of Hodges's guilty plea entered on May 6, 2003, we agree with the state court that McMahon did not render ineffective assistance when he counseled his client to accept the offer of a plea to two third-degree murder charges notwithstanding the testimony Hodges now offers (and perhaps may then have offered) from Ms. Baxter and Ms. Bowen in the nature of an alibi.  As appellate counsel was under no duty to raise every possible claim, and given our assessment that a claim challenging McMahon's performance in this regard would not have succeeded in undoing Hodges's guilty plea, we do not believe this attribution of error to Attorney Dolfman amounts to a Sixth Amendment violation.  In short, none of the various claims characterized by Petitioner in his filings as constituting Ground One of his petition warrant habeas relief.

**B.    Ground Two:  Counsel Failing to Interview/Call Fact Witnesses with Exculpatory Evidence**

The second ground of Hodges's petition somewhat similarly asserts that "trial and appellate counsel were ineffective for failing to interview and call fact witnesses to offer exculpatory evidence."  (Pet. at 9, ¶ 12.B.)  His memorandum of law describes this claim more specifically as centering on witness Cephel Hodges, Petitioner's grandfather.  (Pet'r Mem. at 7.)  (*See also* Pet'r Trav. at 8 (section heading for discussion of "Claim 2" alleging ineffective assistance of counsel for inducing him to plead guilty "when trial counsel knew that Petitioner had fact witness Cephel Hodges to testify that Petitioner was not involved with this crime").)  Petitioner contends that Mr. Hodges was prepared to testify that Petitioner was with him shortly before the shooting and that they were discussing whether Petitioner could borrow his car to take his girlfriend to a party.  (Pet'r Mem.

at 7-8 & Ex. C.[17])  Respondents contend that this claim is defaulted because it was presented to the

state court only as part of a broader claim involving the failure to call the alibi witnesses, Ms. Baxter

and Ms. Bowen.  (Ans. at 26-27.)  Alternatively, they contend that it was properly rejected by the

state court for the same reasons applicable to the claim involving the alibi witnesses.  (*Id.*)

The Superior Court's analysis of the claim involving the failure to call Cephel Hodges was

part and parcel of the analysis regarding the failure to call Ms. Baxter and Ms. Bowen.  *See*

*Commonwealth v. Hodges*, No. 2514 EDA 2006 at 6 n.2 (Pa. Super. Ct. June 14, 2007) (discussing

claim of failure to investigate witnesses and noting that "Appellant's alibi witnesses included his

grandfather, his girlfriend, and his girlfriend's aunt").  The Superior Court thus implicitly concluded

that neither the failure to call Mr. Hodges to testify, nor McMahon's counseling of his client to plead

guilty notwithstanding Mr. Hodges's allegedly available testimony,[18] was deficient performance.

We do not find that state court determination to be unreasonable.  Mr. Hodges's testimony placed

Petitioner near the crime scene close to the time of the shooting: he could hear the gunfire from the

pizza shop from the location at which he had been speaking with Petitioner shortly before.  (Hodges

Aff., Oct. 24, 2005, at 1.)  Mr. Hodges's proposed testimony simply was not exculpatory.  It

provided no reason to second-guess Attorney McMahon's strategic decision not to incorporate it into

the defense — to the extent we can speculate about a defense that had been suggested only by

---

[17] The original affidavit executed by Cephel Hodges was appended to Petitioner's *pro se*
PCRA petition contained in the state court record.  A copy of the affidavit is found at Exhibit C to
Petitioner's memorandum.

[18] Mr. Hodges states in his affidavit that he spoke with his grandson's attorney and informed
him that he was with Petitioner shortly before the shooting and that Petitioner did not have a gun in
his possession at that time.  He came to trial willing to testify to this effect.  (Hodges Aff., Oct. 24,
2005, at 2.)  Of course, Petitioner ultimately pled guilty before the Commonwealth had completed
its case.  Therefore, McMahon had not yet actually "called" any witnesses.

31

opening arguments before Hodges then pled.  Similarly, we cannot say that this proposed testimony would have appeared sufficiently likely to McMahon to result in a more favorable outcome for Hodges than would accepting the offer of the plea to the third-degree murder charges.  *See Strickland*, 466 U.S. at 689 (counseling against second-guessing strategy when assessing allegedly deficient performance); *id.* at 694 (noting that prejudice prong requires showing, to a reasonable probability, that result of the proceeding would have been different but for errors).  We see nothing unreasonable in the state court's rejection of this aspect of Hodges's claim of ineffective assistance of trial counsel.

As there is no merit to the suggestion that McMahon was ineffective in this respect, the claim that Attorney Dolfman was ineffective in not litigating this issue on appeal is similarly meritless.  Habeas relief is not warranted on either aspect of the claims asserted as the second ground of Hodges's petition.

### C.   Ground Three: Counsel Failing to Locate, Investigate, and Interview Eyewitness with Exculpatory Evidence

Continuing in the same vein as the earlier grounds, the third ground of Hodges's petition asserts that "trial and appellate counsel were ineffective for failing to locate[,] investigate and interview eye witness who would have testified to exculpatory evidence."  (Pet. at 9, ¶ 12.C.)  His memorandum of law clarifies that this claim concerns Calvin Palmer (a/k/a Plamer), who Petitioner characterizes as having been "standing within feet of the actual crime" and who allegedly failed to identify Petitioner when providing police with a description of the perpetrators.  (Pet'r Mem. at 9.) (*See also* Pet'r Trav. at 9 (referring to Palmer by name in heading of section pertaining to Claim

3).)[19]  Although he does not state whether or not he knew Petitioner prior to this time, an affidavit

from Mr. Palmer submitted by Petitioner states definitively that Petitioner "was not there at this

incident, nor was he standing out in front of the pizza shop when these crimes were being

committed." (Palmer Aff., Oct. 22, 2005, at 1.)  Respondents contend that this claim is defaulted

because, as with the claim involving Cephel Hodges, it was presented to the state court only as part

of a broader claim involving the failure to call Ms. Baxter and Ms. Bowen. (Ans. at 28.)  They

contend, alternatively,  that it was properly rejected by the state court for the same reasons applicable

to the claim involving the other alleged alibi or exculpatory witnesses and in light of the fact that

Petitioner had not presented the affidavit of Mr. Palmer as part of his PCRA petition. (*Id.* at 28-29.)

On PCRA review, the Superior Court considered the broad contention asserted in Petitioner's

*pro se* brief that trial counsel was ineffective for failing to investigate certain witnesses.  It recited

the elements that Petitioner was required to prove in order to make out such a claim and then

explained how "the record refutes any position that counsel either knew or should have known of

Appellant's purported alibi witnesses." *Commonwealth v. Hodges*, No. 2514 EDA 2006 at 5-6 (Pa.

---

[19] An affidavit provided by Mr. Palmer (Pet'r Mem. at Ex. D) explains that he heard gunshots coming from the pizza shop as he approached it, that he ran across the street, that he saw the lookout, and that he then saw the two gunmen run out of the shop.  He did not know any of the men.  His affidavit dovetails with that of Cephel Hodges (who Mr. Palmer identifies by name) in that it describes him running to call a police officer who happened to have been speaking with Mr. Hodges nearby on another matter. (Palmer Aff., Oct. 22, 2005, at 1.)

According to Petitioner, the police officer who testified at the first day of his trial, Officer Robinson, was the police officer to whom Mr. Palmer was referring. (Pet'r Trav. at 6 & note.) Officer Robinson's testimony does describe that he was "handling a disturbance" about a half of a block from the pizzeria when "a little kid [rode] up on a bike" and advised him of a shooting further up 60th Street. (N.T. 5/5/03 at 55.)  He described this informant as "a little boy," "eleven, twelve." (*Id.* at 61.)  Calvin Palmer's affidavit dated October 22, 2005, more than seven years after the shooting, does not indicate his age in any way.  If Officer Robinson's estimate of the little boy's age was correct, he would have been approximately 16 or 17 years old at the time of Hodges's trial in 2003.

Super. Ct. June 14, 2007).  The court did not return, however, to the subject of whether counsel should have investigated an eyewitness, nor did it refer to Mr. Palmer by name or by a description of his role in the case.  *Cf. id.* at 6 n.2 (referring to "alibi witnesses includ[ing] [Petitioner's] grandfather, his girlfriend, and his girlfriend's aunt").

We agree with Petitioner that the Superior Court does not appear to have decided the aspect of his claim involving the failure to investigate Mr. Palmer.  We recognize that there is some question as to whether this was fairly presented given that this claim was lumped rather inartfully with the claims involving his alibi witnesses and his "mental health illnesses."  *See* Br. for Appellant, *Commonwealth v. Hodges*, Pa. Super. Ct. No. 2514 EDA 2006 at 14-18 (Dec. 20, 2006).[20]  However, we will assume for these purposes that Petitioner's reference to Mr. Palmer's role and proposed testimony at pages 15 and 17 of his brief to the Superior Court, coupled with the appended affidavit, fairly presented his claim.[21]

---

[20] The title for this section of Petitioner's argument in his brief to the Superior Court reads:

2.] THE PCRA COURT ERRED IN ITS DETERMINATION WHEN THE COURT FOUND TRIAL COUNSEL, APPELLATE COUNSEL NOT INEFFECTIVE FOR INDUCING APPELLANT TO PLEAD GUILTY TO A CRIME HE DID NOT COMMIT; AND WHEN THE COURT FOUND COUNSELS NOT INEFFECTIVE FOR FAILING TO CALL EYE/ALIBI/FACT WITNESSES AT TRIAL WHO WOULD HAVE TESTIFIED THAT APPELLANT WAS INNOCENT OF THE CRIMES CHARGED; AND PCRA COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE PRIOR COUNSELS INEFFECTIVENESS IN THE PCRA PROCEEDINGS.

Br. for Appellant, *Commonwealth v. Hodges*, Pa. Super. Ct. No. 2514 EDA 2006 at 14 (Dec. 20, 2006)

[21] The affidavit of Mr. Palmer was not submitted with Petitioner's original PCRA petition. We see that it was appended to his brief in the Superior Court.  The Superior Court did not, however, identify any defect in the presentation of the affidavit as the basis for a finding that this claim was

(continued...)

We view this claim somewhat differently from that of the claims involving the purported alibi or exculpatory witnesses. We would expect that Hodges would have advised his attorney of any persons who could provide him an alibi at the time of the shooting, and/or that those close family members and friends who allegedly provided an alibi would have come forward to counsel to advise that they possessed helpful testimony. The potentially favorable testimony of an eyewitness, however, we would expect *counsel* to uncover, given that, if Hodges were not present at the pizzeria for the shooting, he would not be in a position to suggest to counsel that he interview Mr. Palmer, who claims he *was* present.

The fact that counsel did not, allegedly, investigate or interview Mr. Palmer does not, however, in and of itself establish deficient performance, as counsel would only be expected to engage in reasonable efforts to ascertain whether any eyewitnesses possessed helpful testimony. Petitioner has provided no evidence that a reasonable investigation by counsel would have yielded Mr. Palmer as a witness who was willing to testify for the defense and whose testimony would be viewed as credible and reliable, particularly given his tender years at the time of the shooting. Moreover, in light of the fact that two separate eyewitnesses placed Petitioner at the scene and that a co-conspirator was going to testify against him, we cannot say that there was a reasonable probability that Petitioner would have been acquitted or convicted of lesser charges than the third-degree murder charges to which he pled had Mr. Palmer testified at any trial. We do not believe that this claim warrants further development in an evidentiary hearing or that habeas relief should be

---

[21](...continued)
thus waived. Rather, the court simply did not comment upon the claim involving Mr. Palmer's role or evidence whatsoever. We are unwilling to construe that silence as a finding by the Superior Court that the claim was waived.

granted on this claim.  *See* 28 U.S.C. § 2254(e)(2) (prohibiting federal evidentiary hearing on claim not developed in state court absent clear and convincing evidence that no reasonable juror would convict petitioner).

As with the claims above, in light of our conclusion that Petitioner's claim of ineffective assistance by Attorney McMahon in this regard lacks merit, the assertion that appellate counsel performed deficiently in not presenting this claim and that Hodges was prejudiced by the failure to have pursued this matter on direct appeal, also must fail.

### D.    Ground Four: Counsel Failing to Present Mental Health Records

Petitioner next claims that "trial and appellate counsel were ineffective for failing to present Petitioner[']s mental health records," both "as evidence to show that he is mentally ill and used as the fall guy" and to withdraw the guilty plea.  (Pet. at 9, ¶ 12.D.)  He describes this claim somewhat differently in the section heading in his brief, characterizing the ineffectiveness (as to both trial and appellate counsel) as involving the failure "to present Petitioner[']s mental health record prior to the guilty plea."  (Pet'r Mem. at 10.)  He further explains in his memorandum that he "suffers from mental health disorders" and that he and his family members advised all of his attorneys of this fact but that none of them investigated "this exculpatory mental health evidence."  (*Id.* at 10-11.)  He points to his "confused state of mind" and claims that this would have been evidenced by the contradictions between his testimony at the guilty plea hearing regarding the extent of his education and prison records showing that he read at only a second-grade level.  (*Id.* at 11.)  He contends that, had his mental health records been submitted, the court would have permitted him to withdraw his guilty plea.  (*Id.* at 12.)  In yet another permutation, Petitioner describes this claim in his traverse as involving the performance of counsel "for failing to conduct a competency hearing prior to Petitioner

36

entering the unlawfully induced guilty plea." (Pet'r Trav. at 10.)  The only record that Petitioner submitted to the state court or to this Court relative to any mental issue is a scoring summary sheet on a GED practice test given at SCI Frackville in 2004.[22]  Respondents point to the Superior Court's finding that this claim was waived and its alternative holding that it would fail on the merits as unsupported and contradicted by Petitioner's sworn statements at the guilty plea colloquy. (Ans. at 29-30.)

The Superior Court implicitly rejected the two aspects of the claim asserted by Hodges with respect to his alleged mental disorder.[23]  First, with respect to the claim that plea counsel (Attorney McMahon) unlawfully induced Petitioner's plea "by not investigating a 'mental illness' defense," the court noted that Hodges failed to raise the issue of his mental illness during the guilty plea colloquy and that "even now, Appellant fails to identify which mental illness he was laboring under when he committed these offenses and how that mental illness would have supported a defense to the charges." *Commonwealth v. Hodges*, No. 2514 EDA 2006 at 7-8 (Pa. Super. Ct. June 14, 2007). The record before us is similarly bereft of any proffer as to what this evidence would establish, as Petitioner's papers offer no insight into the nature of his mental disorder (apart from suggestions that he reads and writes at a low grade level) and no explanation of how his disorder relates to the crimes

---

[22] Apparently based on his score on the practice test, Hodges was "not recommended for the Official GED." (Pet'r Mem. at Ex. E.)

[23] The Superior Court stated that this claim was waived, as Hodges had not included this claim in his *pro se* PCRA petition.  The court recognized, however, that he had requested that appointed counsel, Attorney Belli, raise it in an amended petition and that Belli instead filed a *Finley* letter.  Hodges pursued the claim in his *pro se* brief to the Superior Court.  Br. for Appellant, *Commonwealth v. Hodges*, Pa. Super. Ct. No. 2514 EDA 2006 at 6, 7 (Dec. 20, 2006).  Apparently in light of this posture, then, the Superior Court provided an alternative holding as to this claim on the merits.  *See Commonwealth v. Hodges*, No. 2514 EDA 2006 at 7 (Pa. Super. Ct. June 14, 2007).

of which he was accused or any defense available to him as a result of his disorder. Petitioner's vague assertions in this respect simply cannot support a claim of ineffective assistance of counsel in the preparation of his case or in the advice that he accept the offer to plead guilty to the third-degree murder charges.

The Superior Court also rejected the notion that Hodges should have been able to withdraw his guilty plea based on the theory that he was suffering from a mental disorder when he entered the plea. As the court noted, the trial judge specifically asked Hodges if he was suffering from any mental illness and whether he was under the effect of any drugs, alcohol or medication that day. He answered "No" to both questions. *Id.* at 7 (quoting N.T. 5/6/03 at 5). To find his attorney ineffective for permitting him to enter a guilty plea to the third-degree charges while he was allegedly suffering from a mental disorder would require us to put aside the answers Petitioner tendered, which were given under oath and in the presence of both counsel and the trial court judge, and after having consulted with his family. (*See, e.g.,* N.T. 5/6/03 at 10.) While Petitioner contends that his answers in the guilty plea colloquy cannot be deemed reliable in light of his mental disorder, we cannot so lightly set them aside, particularly in the absence of any corroborating evidence that he has, at any time, suffered from a mental disorder. We see nothing unreasonable in the state court's implicit rejection of Hodges's claim that counsel was ineffective in permitting him to plead guilty without exploring the alleged mental illness under which he was then laboring.

While Petitioner's brief seems to focus this claim on the effect the presentation of his mental health records would have had "prior to the guilty plea," (Pet'r Mem. at 10 (section heading)), he also again nominally challenges the failure of appellate counsel, Attorney Dolfman, to somehow present mental health records by way of demonstrating either that he had available mental health

defenses to the charges and/or that his plea could not have been knowing, voluntary, and intelligent. These claims fail for the same reason as the claims addressed to Attorney McMahon's performance: the complete lack of any evidence contradicting the answers he gave at his guilty plea colloquy regarding his mental state at the time of entry of the plea, and the lack of any evidence suggesting that he possessed a viable defense to the charges against him based on any mental illness he suffered from at the time the crime was committed.  Moreover, in light of the absence of any evidence that any "mental health records" would have had any bearing on the issue of whether Hodges's guilty plea was entered in a knowing, voluntary, and intelligent manner, appellate counsel cannot be ineffective for failing to secure and present such records on direct appeal.[24]  We do not believe habeas relief is warranted as to any aspect of Ground Four of Hodges's petition.[25]

### E.     Ground Five: State Court Errors in Refusing to Permit Petitioner to Withdraw the Plea and Denying Hearing Despite Innocence and Ineffective Assistance

In his final ground, Hodges alleges that "trial and appellate counsel were ineffective for inducing Petitioner to plead guilty to a crime he did not commit," and also contends that "the state

---

[24] Hodges contended on PCRA review that he advised his attorneys of his "mental disorder" and provided counsel with a listing of a number of prisons and schools where records of his disorder were located.  He claimed that his "confused state of mind" at the time of the colloquy would have been evidenced by contradictions between his responses in the colloquy and these records, *e.g.*, on the subject of how far he went in school and whether he could read.  *See* Br. for Appellant, *Commonwealth v. Hodges*, Pa. Super. Ct. No. 2514 EDA 2006 at 7-9 (Dec. 20, 2006).  As Attorney Belli noted in his *Finley* letter, however, "[r]egardless of what these records say, petitioner appeared before the Court on numerous occasions and not once did he exhibit mental problems or deficiencies that would render him incapable of understanding the proceedings or the rights he was waiving." *See* Letter from John M. Belli, Esq. to the Hon. Jane Cutler Greenspan (June 1, 2006) at 7.  (Pet'r Mem. at Ex. 2.)

[25] Petitioner's papers do not reconcile the question of how his mental status at the time the crimes were committed would have been relevant if, as he also contends, he was alibied at the time of the murders and therefore presumably had nothing to do with them.  We would not expect counsel to present a defense with such conflicting theories.

39

court denied Petitioner due process of law for not allowing Petitioner to withdraw the tainted guilty plea." (Pet. at 10.)  He contends that he should have received an evidentiary hearing and permission to withdraw his guilty plea in light of his evidence (from Ms. Baxter and Ms. Bowen) demonstrating his innocence.  (Pet. at 10; Pet'r Mem. at 13.)  His traverse clarifies that the focus of this claim, however, is on the propriety of state court rulings; the performance of counsel (the focus of his other claims) is implicated here only insofar as Petitioner contends that the allegedly ineffective assistance of counsel that he received at the time of the plea provided an appropriate basis for the state court to permit him to withdraw his plea.  (Pet'r Trav. at 11.)  Therefore, we construe this claim as concerning: 1) the state court's refusal on direct appeal to permit him to withdraw his guilty plea; and 2) the state court's refusal on PCRA review to hold an evidentiary hearing to enable Hodges to further demonstrate his innocence.

### 1.     State Court Error in Not Permitting Withdrawal of Guilty Plea

Petitioner contends that the state court's denial of his request to withdraw what he characterizes as a "tainted guilty plea" constitutes a denial of due process.  (Pet. at 10.)  He contends that "[u]nder Pennsylvania law the Constitution mandates that the motion to withdraw a guilty plea be honored," citing a Pennsylvania Supreme Court case.  (Pet'r Mem. at 13.)  He takes issue with the Superior Court's decision that his guilty plea was properly entered, citing to the portion of the Superior Court's decision on PCRA review relying upon responses given at plea colloquy for its finding of no ineffectiveness of counsel.  (*Id.* at 14.)  Respondents view this claim as a "repackaged version" of the issue Petitioner raised on direct review and also largely a rehashing of issues resolved by Ground One of his petition.  (Ans. at 32.)  They contend that this claim fails on the merits.  (Ans. at 33.)

Hodges presented on direct appeal the issue of whether "the trial court err[ed] as a matter of law in denying appellant's motion to withdraw his second guilty plea on May 6, 2003[.]" *See* Br. for Appellant, *Commonwealth v. Hodges*, Pa. Super. Ct. No. 1602 EDA 2003 at 4 (Apr. 13, 2004).  His brief cited Pennsylvania cases and the state rules of criminal procedure for the standards by which his request was to be considered. *Id.* at 8.  The Superior Court considered his claim in light of state court precedential cases that stood for the proposition that "[t]here is no absolute right to withdraw a guilty plea," and noted that state law did not provide for a withdrawal of a plea after sentencing absent a showing of prejudice amounting to a manifest injustice. *Commonwealth v. Hodges*, No. 1602 EDA 2003 at 3-4 (Pa. Super. Ct. Nov. 15, 2004).  The court determined that the totality of the circumstances demonstrated that Hodges's guilty plea was entered knowingly, voluntarily, and intelligently; as a result, Petitioner failed to meet his burden to show that he would suffer a manifest injustice were he not permitted to withdraw his plea. *Id.* at 5-6.

Petitioner has failed to demonstrate any constitutional defect in the state court's decision. In the one case cited by Petitioner, *Commonwealth v. Randolph*, 718 A.2d 1242 (Pa. 1998), the state supreme court reversed a trial court that had denied a defendant's motion to withdraw his guilty plea when that defendant had claimed he was not guilty of all of the charges and that he had been coerced to enter his plea.  An important distinction with this case, however, is that *Randolph* involved a request to withdraw the plea *before sentencing*, which is when, pursuant to state law, such requests are generally to be granted if in the interest of fairness and justice and if the Commonwealth would not be substantially prejudiced.  Here, of course, Petitioner had already been sentenced, and the interests of fairness, justice, and the Commonwealth were quite different.  Nothing in *Randolph* purported to describe a federal due process right to the withdrawal of a guilty plea following

41

sentencing.  We see no error in the Superior Court's resolution of this claim that could possibly be considered an unreasonable application of any federal due process principles.  We do not find this aspect of Ground Five to warrant habeas relief.

### 2.    The failure of the state court to hold an evidentiary hearing

The other aspect of Hodges's due process claim relates to the state court's failure "to grant Petitioner a hearing in light of his alibi/eye/fact witness[e]s proving his innocence; resulting in a miscarriage of justice."  (Pet. at 10.)  Respondents view this claim as concerning the denial by the PCRA court of Hodges's request for an evidentiary hearing.  They assert that claims involving errors in the state post-conviction process are not cognizable on federal habeas review.  (Ans. at 33-34.)

Petitioner's brief does not discuss the hearing issue as a basis for habeas relief and omits this aspect of Ground Five from the corresponding section heading in the brief.  (*See* Pet'r Mem. at 12.) The only discussion in this section of the brief concerning the failure to have held an evidentiary hearing appears to be by way of trying to excuse the poorly developed record.  (*See* Pet'r Mem. at 14 ("It is respectfully submitted that since there [was] no evidentiary hearing in the state court, at no fault of petitioner who tried with due diligence by requesting one in the state court and was denied such request . . . , Petitioner respectfully request[s] [a new trial] and or a federal evidentiary hearing in the interest of justice.").)  While we are not sure whether Petitioner intended to assert this as a separate basis for habeas relief, we would agree with Respondents that the determination by the state court that an evidentiary hearing was not required for the adjudication of Petitioner's challenge to the guilty plea under the PCRA cannot, by itself, give rise to any federal habeas relief.  We see no basis for a writ to be granted based on Ground Five of the petition.

42

## V.     CONCLUSION

The record before the Superior Court and before this Court satisfies us that Hodges pled guilty to the third-degree murder charges on May 6, 2003 at the advice of counsel because it was the best outcome that he could reasonably expect given the Commonwealth's evidence and the very real prospect of two life sentences on the first-degree murder charges.  We see no basis to conclude that the prospects of an acquittal had the case gone to trial were dimmed due to deficient performance by plea counsel, nor do we believe that the affidavits subsequently presented to the state court (nor the other affidavits obtained more recently) undermine the validity of a guilty plea that was entered in conformity with federal constitutional standards.  Petitioner had the opportunity to present his case or to voice any concerns about the assistance he was receiving from counsel and did not do so.  On the contrary, he confirmed under oath that he was not dissatisfied with his attorney and that he was pleading guilty of his own free will.  He received the benefit of the bargain of a sentence significantly lighter than that to which he was subject and that which his co-conspirator had already received following upon his conviction at trial.

Pursuant to Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit, at the time a final order denying a habeas petition is issued, the district judge is required to make a determination as to whether a certificate of appealability ("COA") should issue. A COA should not issue unless the petitioner demonstrates that jurists of reason would find it to be debatable whether the petition states a valid claim for the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  For the reasons set forth above, we do not believe a reasonable jurist would find the Court to have erred in denying the present petition.  Accordingly, we do not believe a COA should issue.

43

Our Recommendation follows.

## RECOMMENDATION

**AND NOW**, this    7th    day of October, 2008, it is respectfully **RECOMMENDED** that

the motion to expand the record and/or to stay the proceedings be **DENIED**.  It is **FURTHER**

**RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED** and that a certificate

of appealability should **NOT ISSUE**, as we do not believe that Petitioner has made a substantial

showing of the denial of a constitutional right.

Petitioner may file objections to this Report and Recommendation.  *See* Local Civ. Rule 72.1.

Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:


 /s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE

44